## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 7:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis, T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Wayne Day, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 11, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-568 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Barbara Crawford, Judge <br><br> The Honorable Amy J. Barbar, Magistrate <br><br> Trial Court Cause No. <br> 49G01-1606-F5-24381 |

**Altice, Judge.**

## Case Summary

Following a bench trial, Robert Day was convicted of Level 5 felony attempted burglary and Class A misdemeanor resisting law enforcement. On appeal, Day challenges the sufficiency of the State's evidence with respect to only his conviction for attempted burglary.

We affirm.

## Facts & Procedural History

In the early morning hours of June 21, 2016, Officers Derek Loyal and Aaron Tate from the Lawrence Police Department responded to an alarm at the local Veterans of Foreign Wars post (the VFW). Upon exiting their vehicles at the front (south side) of the VFW, the officers heard a loud banging coming from the west side of the building. When they followed the noise to its source, the officers saw Day repeatedly striking the back door of the building with a hammer. Officer Loyal called out to Day, "Stop, Lawrence Police. Show us your hand." *Transcript Vol. II* at 9. Day turned toward the officers, raised the hammer as if to throw it, but then dropped the hammer and took off running westbound toward a tree line. Officer Tate unsuccessfully deployed his taser as Day reached the tree line and then Officer Loyal continued to chase Day on foot through a parking lot and then across Thunderbird Road.

[4] After apprehending Day in a field across the road, Officers Loyal and Tate inspected the area and observed damage to the VFW building. Specifically, the metal weather stripping had been ripped off the side door and all the exterior wires to the building had been cut. A walkie talkie was recovered near the door Day had been striking, and the claw hammer was found nearby. Officer Loyal also noticed a vehicle parked in a lot just west of the tree line through which Day had fled. The truck was backed in at an angle and parked partially in the grass and away from the designated parking spots. Inside the vehicle, in open view, was a pair of large bolt cutters and a small sledgehammer on the passenger seat.

[5] John Armstrong, a member of the VFW, arrived on the scene shortly after the alarm sounded. Armstrong walked the grounds and identified the damage to the door and wiring of the building. Additionally, he noticed that an outside barn on the northwest side of the VFW property had been burglarized. According to Armstrong, the lock to the barn had been cut off, the doors were opened, and the "stuff that was in it" had been removed and was "sitting outside of the barn." *Id*. at 30.

[6] On June 23, 2016, the State charged Day with Count 1, attempted burglary, a Level 5 felony; Count 2, resisting law enforcement, a Class A misdemeanor; and Count 3, criminal mischief, a Class A misdemeanor. The trial court found Day guilty of both Counts 1 and 2 but did not enter a judgment of conviction on Count 3 because it would "merge" with Count 1. *Transcript Vol. II* at 51. A sentencing hearing was held on February 12, 2019, at which the trial court

imposed a four-year executed sentence.  Day now appeals, challenging the sufficiency of the evidence to support his conviction for attempted burglary.

## Discussion & Decision

[7]     In reviewing the sufficiency of evidence, we consider only the probative evidence and reasonable inferences supporting the conviction.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh the evidence, and we will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt.  *Id*.  It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence will be found sufficient if an inference may reasonably be drawn from it to support the conviction.  *Id*. at 147.  A conviction may be based purely on circumstantial evidence if that evidence supports a reasonable inference of guilt.  *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995).

[8]     In Indiana, a person commits Level 5 felony burglary by breaking and entering the building or structure of another person with intent to commit a felony or theft inside.  *See* Ind. Code § 35-43-2-1.  A person is guilty of attempt when, acting with the culpability required for commission of the crime, he engages in conduct constituting a substantial step toward commission of the crime.  Ind. Code § 35-41-5-1(a).

[9]     Day argues that the State failed to prove that he intended to burglarize the VFW rather than simply vandalize its exterior.  More specifically, he asserts: "[A]ny evidence Day intended to take the further step of burglarizing the VFW

is vague speculation, requiring imagination or conjecture to draw inferences of guilt. The evidence in the record reveals no rational course of conduct aimed at committing a burglary." *Appellant's Brief* at 10. We do not agree.

[10] "Specific intent in an attempted burglary action does not prescribe a requisite level of mens rea for the burglary itself, but rather requires that the defendant intended to commit the underlying felony [or theft] once he broke into and entered onto the premises." *Richeson v. State*, 704 N.E.2d 1008, 1009 n.1 (Ind. 1998). It is well established that, regarding the intent element of burglary, the intent to commit a felony or theft inside may not be inferred from proof of breaking and entering alone. *Freshwater v. State*, 853 N.E.2d 941, 943 (Ind. 2006). Further, flight alone may not be used to infer that intent. *Id*. However, these facts may combine with other evidence to establish the actor's intent, such as removal of property from the premises. *Id*. The additional evidence need not be "insurmountable," but it must provide "a solid basis to support a reasonable inference that the defendant had the specific intent to commit theft." *Id*. (citing *Justice v. State*, 530 N.E.2d 295, 296 (Ind. 1988)).

[11] Here, the State established that around four o'clock in the morning Day was discovered by officers repeatedly striking on the back door of the VFW building with a clawed hammer. In his efforts, Day had pried away the metal weather stripping around the door in an apparent attempt to gain entry. The wiring to the building had been cut, including the security cables. These facts indicate a desire to avoid detection while attempting to break and enter the VFW. Additional facts also suggest that Day might have been communicating and

working with someone else through the walkie talkie and that he had a truck nearby to assist in moving any stolen items. In fact, when confronted by police, Day fled westbound in the direction of the curiously parked truck, which contained bolt cutters and other tools. As the officers pursued him, Day continued through the parking lot and across a street into a field.

[12] In addition to the above facts, the State presented evidence that an outbuilding on the VFW's property, the northwest side of the property, had been broken into. The lock was cut off, the doors were opened, and property from inside the barn had been moved to the outside. The burglary of the outbuilding, though not charged, appeared to be part of a coordinated criminal episode that morning. Thus, we agree with the trial court that the evidence regarding the outbuilding was indicative of Day's intent with respect to the main VFW building. *See Timmons v. State*, 500 N.E.2d 1212, 1215 (Ind. 1986) ("This Court has previously indicated that evidence of a burglary predicated on theft which was committed during the course of a criminal episode that included an attempted burglary may be sufficient evidence to infer the specific intent requisite for the attempted burglary conviction.").

[13] We conclude that it was reasonable for the trial court to infer Day's intent to commit a theft inside the VFW building based on the totality of the circumstances presented at trial. Moreover, we reject Day's attempt to have us reweigh each piece of evidence in isolation.

[14] Judgment affirmed.

Brown, J. and Tavitas, J., concur.